UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


TINA MORGAN,                                )
                                            )
         Plaintiff,                         )
                                            )
v.                                          )    No.  3:03-CV-423
                                            )    (Phillips)
TANGER OUTLET CENTERS, INC., et al.,        )
                                            )
         Defendants.                        )


## MEMORANDUM AND ORDER

In this premises liability action plaintiff Tina Morgan sued defendant Tanger Outlet Centers after she slipped and fell on a wheelchair ramp on Tanger's premises during a heavy rainstorm. Morgan alleged that a drainage problem existed in the area near the ramp which Tanger knew or should have known about which made the ramp unreasonably dangerous. Morgan alleged that Tanger, as owner of the premises, failed to exercise ordinary care in maintaining the premises in a condition safe for customers.

Tanger has moved for partial summary judgment on the issue of liability for the drainage problem, arguing that Morgan has failed to identify, and is unable to identify, any information supporting a drainage problem or Tanger's actual or constructive knowledge thereof. For the reasons which follow, Tanger's motion for partial summary judgment will be denied.

Background

This case involves injuries sustained by Morgan when she slipped and fell on a handicap ramp located on Tanger's premises. Morgan was visiting the Sevierville area with family and friends. They decided to visit a video store located on the Tanger premises. It had been raining for 5-30 minutes when the Morgan party parked their car in Tanger's parking lot. Two members of the party exited the car and entered the store. After waiting for several minutes, Morgan, a friend and two children, exited the car and briskly walked toward the video store entrance.

Water in the parking lot was "ankle high" and had collected in the area around the handicap ramp. As Morgan attempted to walk up the ramp, both of her feet flew out from under her and she fell to the ground striking her head on the concrete. As a result of the fall, Morgan suffered a head injury which required treatment at a Sevier County hospital.

Morgan hired J. Alan Parham of Parham Engineering Consultants to assess and investigate the circumstances surrounding the accident. After reviewing the evidence and conducting a site inspection, Parham identified a storm water drainage problem in the parking lot and around the handicap ramp. Parham concluded that Tanger failed to use the proper paint which, combined with the storm water drainage problem, created a latent defect. These two factors led to Morgan slipping on the handicap ramp and falling.

Kevin Hurton, the operation manager of the Tanger premises stated that he assumed that Morgan fell as a result of standing water. In fact, water was still standing the next morning when the assistant manager returned to work and took a written report from Morgan. Hurton also stated that Tanger inspected the premises daily.

Morgan alleges that a drainage problem existed in the area around the handicap ramp creating a dangerous condition that Tanger knew or should have known existed. Further, this dangerous condition increased and added to the unreasonably slick condition of the ramp. Tanger denies these allegations and moves for partial summary judgment on the issue of the drainage problem.

Analysis

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-

moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

Tanger has moved for partial summary judgment on the issue of liability for the drainage problem, arguing that Morgan has failed to identify, and is unable to identify, any information supporting a drainage problem or Tanger's actual or constructive knowledge thereof. In support of the motion, Tanger states that Morgan admitted in response to requests for admission that she had no evidence that Tanger knew that a drainage problem existed in the area near the ramp where the subject accident occurred. Thus, Tanger submits there is no evidence in the record of a drainage problem or of its actual or constructive knowledge thereof.

In interrogatories and requests for production of documents, Morgan was asked the following:

>1. If you have any evidence that a drainage problem in the area near the ramp where the subject accident occurred existed on or about August 1, 2002, please describe with specificity each and every fact upon which you rely in

-4-

making the claim that such a drainage problem exists, including identification of each and every witness with such knowledge, identifying each such witness by name, address and telephone number.

2. If you have any evidence that Defendant Tanger knew that a drainage problem in the area near the ramp where the subject accident occurred existed on or about August 1, 2002, please describe with specificity each and every fact upon which you rely in making the claim that Defendant Tanger knew that such a drainage problem existed, including identification of each and every witness with such knowledge, identifying each such witness by name, address, and telephone number.

3. If you have any evidence that Defendant Tanger should have known that a drainage problem in the area near the ramp where the subject accident occurred existed on or about August 1, 2002, please describe with specificity each and every fact upon which you rely in making the claim that Defendant Tanger should have known that such a drainage problem existed, including identification of each and every witness with such knowledge, identifying each such witness by name, address and telephone number.

4. If you have any evidence that a drainage problem in the area near the ramp where the subject accident occurred had any impact on the surface of the ramp on or about August 1, 2002, please describe with specificity each and every fact upon which you rely in making the claim that a drainage problem had any impact on the surface of the ramp, including identification of each and every witness with such knowledge, identifying each such witness by name, address and telephone number.

Morgan's response to each of these interrogatories was "All existing evidence regarding the above is on file with the court or is in the possession of Defendants' counsel in the form of pleadings, party depositions, expert reports and expert depositions." Tanger asserts that Morgan is unable to present evidence of a drainage problem in the area near the ramp or Tanger's actual or constructive knowledge thereof. There is no evidence in the record that would support this allegation, and Morgan is unable to point to any specific evidence in support of her claim.

Morgan opposes the motion stating that she has presented evidence of a drainage problem through the depositions taken in this matter and the affidavit of Parham. Morgan contends this evidence demonstrates constructive notice of the dangerous condition presented by the drainage problem. Thus, Tanger's motion for partial summary judgment should be denied.

In Tennessee, business proprietors are not insurers of their patrons' safety. However, they are required to use due care under all the circumstances. *Martin v. Washmaster Auto Ctr., U.S.A,* 946 S.W.2d 314, 318 (Tenn.App.1996). Business owners have a "duty to exercise reasonable care and protect their customers from reasonable risk of harm, which requires maintaining the property in a reasonably safe condition." *Rice v. Sabir,* 979 S.W.2d 305, 308 (Tenn. 1998); *Blair v. Campbell,* 924 S.W.2d 75, 76 (Tenn. 1996). This duty includes removing and/or repairing dangerous conditions or warning

customers of dangerous conditions that the owner could not have removed or repaired. *Id.; Eaton v. McClain,* 891 S.W.2d 587 (Tenn. 1994).

In order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence, that: (1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident. *Martin,* 946 S.W.2d at 318 (citing *Ogle v. Winn-Dixie Greenville, Inc.,* 919 S.W.2d 45, 47 (Tenn.App.1995); *Jones v. Zayre, Inc.,* 600 S.W.2d 730, 732 (Tenn.App.1980). Tennessee courts have also held that constructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition. *Simmons v. Sears, Roebuck & Co.,* 713 S.W.2d 640, 641 (Tenn.1986).

In *Blair v. West Town Mall,* 130 S.W.3d 761 (Tenn. 2004), the Tennessee Supreme Court dealt with the very issue raised by Tanger. In *Blair,* a mall patron sued for injuries sustained when she slipped on oil spots as she exited the mall. The court held:

> in Tennessee, plaintiffs may prove that a premises owner had constructive notice of the presence of a dangerous condition by showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence.

-7-

> . . .
>
> The question is whether the condition occurs so often that the premises owner is put on constructive notice of its existence. The condition could be caused by the owner's method of operation, by a third party, or by natural forces. A premises owner is put on constructive notice of a dangerous condition that is a recurring incident, or a general or continuing condition, regardless of what caused the condition.

*Id.* at 766.

In this case, Morgan slipped and fell when she attempted to walk up a handicap ramp located on Tanger's premises. It had been raining for approximately 5-30 minutes when she fell. Water in the parking lot was described as being "ankle high." Plaintiff's expert, Parham, identified a storm water drainage problem in Tanger's parking lot around the ramp when he inspected the premises. In fact, he observed standing water on the day he performed his inspection. Parham also concluded that Tanger failed to use the proper paint which, combined with the storm water drainage problem, created a latent defect which caused Morgan to slip on the handicap ramp and fall. Hurton, Tanger's operations manager, stated that he assumed Morgan had fallen because of standing water when he learned of the accident. Contrary to Tanger's argument, Morgan has presented probative evidence to support her claim.

Subsequent to the deposition of plaintiff's expert witness, J. Alan Parham, on February 28, 2006, defendants filed a reply brief asserting that Parham's testimony fails to

establish that the alleged problem with the drainage system constituted a cause in fact of Morgan's fall or injuries. Parham testified as follows:

> Q. Do you have an opinion as to if the drainage system was adequate, whether this accident would have occurred?
>
> A. I believe it still would have, yes, because of the severity of the slickness of the paint.
>
> Q. Okay. And on the other side –
>
> A. Can you –
>
> Q. Sure.
>
> A. I answered what I thought I heard. Can you repeat your last question?
>
> Q. Do you have an opinion as to whether – if the drainage system was adequate, whether this accident would still have occurred?
>
> A. Most likely would have occurred, yes.

Tanger argues that Parham's testimony defeats Morgan's cause of action related to the drainage problem when he admits that the accident would have happened even if the drainage system had been adequate. As Morgan cannot show by a preponderance of the evidence that the problem with the drainage system constituted a cause in fact of her fall or injuries, Tanger asserts it should be granted partial summary judgment as to the alleged problems with the drainage system.

-9-

Morgan responds that Parham's testimony has been misunderstood by Tanger, and asserts the drainage problem on Tanger's premises was a cause in fact of her fall and injuries. Morgan points to Parham's deposition testimony that the drain at the site appeared to be plugged due to improper maintenance or cleaning. In addition, Parham provided the following opinion regarding the drainage system:

> Q. Well, does your opinion find fault with the drainage system's design, maintenance, or do you have an opinion as to the particular problem with the system?
>
> A. I find that there was a problem either through design and/or construction of the parking lot in this area. I find that there has been – potentially may have been a drain installed to alleviate or correct the problem.
>
> . . .
>
> However, to keep from complicating everything, since there was a drain that did exist in this area, it is a maintenance problem that caused this because, if this drain had been working – had been cleaned out and had been working, this water would have drained off and would have been removed from this area.
>
> . . .
>
> Q. Okay. And so it's your opinion that standing water on the ramp would wake (sic) make it be more slick than if a lot of rain had just fallen on it was still falling on it?
>
> A. I would say that it was – there would be no dry point on it whatsoever, it is going to be continuous, whereas there – you might have a very small section – because of the water dispersion properties that may exist on this there

-10-

> might be some slight areas that did not – in a
> millisecond, may not have had water on them at
> that time. But the areas where it had gone up on
> it was going to be completely submerged.

Parham also testified that the large pool of standing water at the ramp was a problem as pedestrians would hurry or even attempt to jump over the standing water rather than walk as they normally would.

In support of its position, Tanger relies on the case of *Hale v. Ostrow*, 166 S.W.3d 713 (Tenn. 2005). However, in its brief, Tanger failed to include the last sentence of the cited paragraph in which the Tennessee Supreme Court found:

> The defendant's conduct is the cause in fact of the plaintiff's injury if, as a factual matter, it directly contributed to the plaintiff's injury. In such a case as this one, we must ask whether the plaintiff's injury would have happened "but for" the defendant's act. *See Wood v. Newman, Hayes, & Dixon Ins. Agency,* 905 S.W.2d 559, 562 (Tenn. 1995). If not, then the defendants' conduct is a cause in fact of the plaintiff's injury. **It is not necessary that the defendant's act be the sole cause of the plaintiff's injury, only that it be a cause.** (Emphasis added).

*Id.* at 718.

In this case, a reasonable jury could find, based upon Parham's testimony, that a blocked drain allowed water to pool in the area around the handicap ramp which created a dangerous condition. In addition, Tanger painted the ramp with a substance that did not contain a sufficient friction agent, thereby creating a second dangerous condition when the handicap ramp was wet. Whether the pooling of water or the slick ramp were

-11-

independent causes in fact of Morgan's fall, or whether the pooling of water and the slick ramp in combination was the cause in fact of Morgan's fall is a question which will have to determined by the jury after the parties have presented their proof. Because there are disputed issues of material fact as to causation, Tanger's motion for partial summary judgment will be denied.

## Conclusion

For the reasons stated above, defendant Tanger Outlet Centers' motion for partial summary judgment [Doc. 47] is **DENIED.** The parties will prepare the case for trial.

**ENTER:**

        s/ Thomas W. Phillips
      United States District Judge